Good morning, your honors. May it please the court. I'm Melissa Salinas, and I'm counsel of record for Mr. Webster, and I'd like to introduce Thomas Codrey from the University of Michigan Law School Federal Appellate Litigation Clinic. Thank you. Thomas Codrey Good morning, your honors, and may it please the court. My name is Thomas Codrey, and I represent Appellant Jonathan Webster. Before I begin, may I please reserve three minutes of my time for rebuttal? Melissa Salinas Yes. Thomas Codrey Mr. Webster's case presents this court with an opportunity to take a firm stance on careless application of the sentencing guidelines and to clarify two enhancements that courts in this circuit routinely encounter. My client asks this court to vacate his sentence and remand for resentencing for two reasons. First, applying the charitable misrepresentation enhancement was plain error because Mr. Webster didn't act to obtain a benefit as the guidelines binding commentary demands and as even the second, sorry, your honor. Melissa Salinas Do you even get plain error review? Didn't you waive that by agreeing that it applied? Thomas Codrey No, your honor. In fact, within Mr. Webster's plea agreement, there was an explicit appellate preservation clause, not an appellate waiver clause. So just to quote from the language of his plea agreement, the appeal would be allowed if the sentence imposed was procedurally unreasonable. And here we have a sentence that was procedurally unreasonable because as this court held in Stubblefield, a sentence is procedurally unreasonable if it misinterprets the sentencing guidelines or miscalculates the guideline range. Melissa Salinas But that's a preservation clause that basically it's saying even though I am entering a plea, I am preserving the right that I would otherwise have to appeal an unreasonable sentence. Any other defendant in the same position would be waiving that right by agreeing to the application of a particular enhancement. Now, other enhancements that he didn't agree to, he certainly preserved the right to appeal those. But the preservation clause, you're arguing that that preservation clause granted him extra appeal rights, that it meant that he was incapable of waiving a right so that he could have stood before the court and agreed to everything that the prosecutor argued. And still, because of that, he would have these springing appeal rights that no one else would ever have. Thomas Codrey No, your honor, it's not that it would be that he struck. So what the bargain he struck was on page six, where he specifically says he agrees, defendant agrees to this exact two-level enhancement. So all the preservation of the right to appeal errors of procedural reasonableness would be related to things that are not conceded, which is what I take Judge White to be saying. But he specifically says, I agree as to this enhancement. I don't understand how you can undo that. Thomas Codrey At the most, your honor, it's ambiguous as to what it means. Because, and as this court held in Bauman, when there is ambiguity, you read it in favor of the defendant. Judge Walton What's the ambiguity? Thomas Codrey Well, the ambiguity is that perhaps your honors are right that of course there's, it's not going to grant him extra rights. But as part of the bargain he struck, he had a clause put in that plea agreement that says that if a sentence was procedurally unreasonable, and there's nothing in there about whether it was, whether it was brought up at the time that it was procedurally unreasonable. It's just any procedural unreasonableness could be grounds for an appeal. Judge Walton But what's the worth then of this provision on page six of the plea agreement that he agrees that certain sentencing guidelines will apply? What's the government getting for that agreement? Nothing. If it can challenge it as being wrong later on. Thomas Codrey They're getting the fact that the sentence was accepted at the district court. And then right now, this is obviously here on plain error review. And so the fact that it wasn't raised at the time, that gets the government something for its for its bargain, and the guilty plea itself, your honors. And so what Mr. Webster was agreeing to was that he was going to accept what was in the plea agreement at sentencing and allow the judge to impose the sentence that was recommended, but then preserving that right for appeal. Judge Walton Let's put it this way in terms of your view of ambiguity. Let's say there was not this preservation of the right to review for procedural unreasonableness. Let's just say that clause doesn't exist. You would agree that what's on page six unambiguously waives his right to challenge this particular enhancement, right? Thomas Codrey Well, if we look at Smith, actually, your honor, it's not all that clear. Smith was a case where the government also claimed that by accepting terms within a plea agreement, the defendant waived the right to challenge something that was in that agreement on appeal. And the Smith court, and that was a Sixth Circuit case in footnote one, said that they weren't going to accept that as a waiver. It wasn't a knowing and an intentional waiver, as the Supreme Court in Olano put it. And so I don't think that that is a settled matter. But certainly when you have a clause such as this, which distinguishes this case from Thompson, which is a case that the government cites in its brief, where you have an explicit appellate preservation clause, that should be enough to get us over the hill here. Al Gore How does the government do this? And given your reading of this footnote one, and I don't know, Smith, whatever the case is, what's the way to write this agreement that removes ambiguity? Thomas Codrey Well, the government could have an explicit appellate waiver for specific arguments or as to the Al Gore I'm taking the appellate waiver point, the right page six differently. To make this meaningful. Thomas Codrey To say that any enhancements that are accepted within this plea agreement will be deemed waived, I think that would be sufficient. But if you have a preservation clause, that's in there for a reason, and that was something that Mr. Webster got as part of his bargain to be able to challenge procedural unreasonableness in this court. Al Gore How about the fact that he signs this and does the same thing at the hearing? Thomas Codrey I don't think that changes it, Your Honor. The fact is that as part of that agreement, he had preserved that right. Now he was accepting that pursuant to the agreement in the agreement and then in open court. But we don't have a situation, as with some of the invited error cases that the government cites to, where there was an urging that this enhancement was correctly applied or in open court, you know, a lot of discussion about this particular enhancement and counsel saying that this was the correct enhancement. This is something that was within the plea agreement, but wasn't urged by counsel at any point. It really wasn't up for dispute, and that's why we're here on plain error. Judge Cardone So you said at one point that the defendant would have to waive the right to challenge this enhancement. What if the defendant said in the plea agreement, I agree that this enhancement applies? Would that be a waiver? Mr. Walsh I think perhaps if it were specifically related to that enhancement and he said that he agreed there, then that might be a different case. But that's not what we have here. We... Judge Cardone Why isn't that what we have here? Because this says defendant agrees and recommends to the court that the court apply the following sentencing guidelines in imposing a sentence and further agree and stipulate as follows. And then there's this particular enhancement listed. I think that agreement has to be read in the context of the appellate preservation clause that was within there as well. Judge Cardone So that's the answer, that this is more because  Mr. Walsh Why isn't the word recommended, invited error? They're not just agreeing, they're recommending it. He, defendant, recommends. Mr. Walsh Yes, Your Honor. The invited error cases show much more extreme fact patterns than this. And to read invited error here, I think, would be to expand that doctrine beyond its acceptable reach. Invited error is more for when... Judge Cardone I don't understand why. I mean, let's just imagine the hearing. The court says, okay, what should we do here? And the defendant, trying to curry favor for whatever reason, says, I recommend you provide this two-level enhancement. That's all he says, period. Judge Cardone But then a defendant could never have the sort of appellate preservation clause that Mr. Webster bargained for here because he would have to accept the terms that were within the plea agreement, which he was ready to do as part of the plea agreement. But then he also wanted to make sure that he would preserve his procedural rights for appeal. Judge Sotomayor But he does, because unlike so many of the appeals that we get with appellate waiver provisions, most of those, the only thing they preserve is a sentence that's beyond the maximum, that there's an agreement to accept this court's scoring. This one doesn't have that. And that's the reason why you can challenge these other scoring matters that you didn't waive. That's why you can challenge the number of people, and I think there are a few others, that you didn't affirmatively say to the court, yes, you should apply this. Judge Cardone Yes, Your Honor. I appreciate your skepticism on that point, and I will return to it on rebuttal. But if I may, with my remaining time, I'd like to turn to the vulnerable victim. Judge Cardone I was going to take you, exactly. Well, you know, I guess I have a problem with the merits of your charitable organization issue. Judge Sotomayor Yes, Your Honor. Judge Cardone So the 2B1.19a says, if the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization, increased by two levels. And why isn't this exactly within 9a? And I know your answer is, well, don't forget about the application note, 8b. But I can struggle and say it's within 8b. Subsection B9a applies in any case in which the defendant represented that the defendant was acting to obtain a benefit on behalf of a charitable organization. And here this defendant creates a fake charity and tells people in these ads he's going to help them through this fake charity. And why isn't this within, arguably, within 8b as well as  Judge Sotomayor Because the benefit was actually being offered to others. Mr. Webster wasn't acting to obtain the benefit. And if we allow it to just simply obtain a benefit on behalf of a charitable organization. So he was saying he was going to get these poor people funds via his charity. Judge Cardone Yet he was going to get the benefit for them. They were going to be the ones getting the benefit. He wasn't. The scheme that he had in place wasn't the sort of scheme that this guideline was meant to cover. Previously, it might have been before the change, but the change in the language added those important words to it. To obtain a benefit. To obtain a benefit on behalf of a charitable organization. And this benefit here, Your Honor, wasn't to be obtained on behalf of the charitable organization. It wasn't obtained to benefit the charitable organization, but it's not to benefit the charitable organization. It's to obtain a benefit on behalf of a charitable organization. I think perhaps what Your Honor is getting at is whether the identification information itself could constitute a benefit. And it if we were to read benefit that broadly, then it would read out the amendment that the commission sought fit to pass. Because previously, it was the case that the guideline would apply if you simply misrepresented that you were acting on behalf of a charitable organization. But when the commission made that change, it did so very expressly to add the terms to obtain a benefit. So benefit must mean something. And if it were to mean identification information, then you wouldn't have needed that change. You could have just, I see my time is up. Yes. And if you would like to take two extra minutes to address your other sentencing guideline issue, that'd be great. Thank you, Your Honor. I appreciate that. You can do it right now. Oh, right now? Yeah. Oh, I'm sorry. Happily. We don't want to lose track of your case. Yeah, no, certainly. I'll turn then to the vulnerable victim enhancement. And so the reason why this constituted error is that the government failed to show that any of the asserted victims that they put forward were in fact harmed, as the guideline requires. Now going back to this court's decision in Dixon, we can see that harm here is a high bar. It's not an abstract point that you can make. And looking beyond this circuit to Johns, I think Johnson You're saying it has to be financial? Or what are you saying? Financial would be one way, Your Honor. A physical harm But that's not the only way. That's sufficient, but not necessary. A physical harm could also be, but the abstract harm of having one's identification information out there used by someone else, even if you don't even know that it's being used for bad purposes, that wouldn't be sufficient. And if No psychological harm. Perhaps if you were aware of the psychological harm and it was something arising to emotional distress that we might recognize in a tort, then perhaps. But that's not what we have here. We have somebody who is being put forward as a victim, or people who are being put forward as victims, based purely on the fact that they were made targets of criminal activity that they What about the fact that they've got to go change their accounts and all that other stuff? We have absolutely no reason to think that that actually happened in this case, Your Honor. You mean because there's no evidence that was introduced at sentencing? Is that why? There's no evidence on that point. Why did they need it when your client said, I ruined some people's lives? That seemed like pretty good evidence. Well, the fact that Mr. Webster expressed remorse at a sentencing hearing, I don't think that should be used against him as evidence of the fact that there was harm. He knew that he used their identification information, and he was feeling understandably very remorseful about that and expressed that to the court. But that's not So he didn't really mean it. He was trying to express remorse, but didn't really mean it the way he put it. So it was fake remorse. He just wasn't in the position to really speak to whether there was harm or not, Your Honor. He may have been feeling very bad about the fact of what he did, and I believe that he didn't mean it. But that's not the sort of harm that we're talking about here. If we look to a case such as John's, it's actually very similar to this case in that there was a mortgage fraud scheme, and that case is out of the Seventh Circuit, but it was a mortgage fraud scheme where people were allegedly made victims as part of it. But they actually suffered no financial harm as a result of it. They were just instrumentalities as part of the fraud, and that, again, is what we have here. There's no denying the fact that he did use their identification information, but they were just part of the fraudulent scheme, and that is insufficient under this guideline.  Thank you, Your Honor. Good morning, and may it please the Court. My name is Jessica Knight on behalf of the United States of America. We are here today because the defendant is challenging the imposition of two sentencing guidelines. The first, Section 2B1.1b9, involves misrepresentations that the defendant was acting on behalf of a charitable organization. The defendant in this case did agree with and recommend in his plea agreement that the district court should apply this Consistent with that position, he did not object to the PSR, and when he did object to other enhancements, he acknowledged that his activities here involving the misrepresentations on the charity did result in a two-point enhancement. And then when it came time for sentencing, and the court made clear with defense counsel, other than the objections that you have made, which did not include this enhancement, are you in agreement with the way I've calculated these guidelines? And the defense counsel indicated yes. But then normally we allow plain error review of newly discovered arguments that a defendant might have that might have real merit if they satisfy the requirements of the plain error doctrine. So why shouldn't we do that here? Your Honor, I believe this case is a classic example of the invited-to-error doctrine's purpose, that the defendant has on numerous occasions urged the court, recommended that the court, invited the court to apply this enhancement to his case. But just to make sure we're all on the same page, invited-to-error is a species of waiver. I mean, the real dichotomy is waiver versus forfeiture. So the first answer to Judge Moore is this is a waiver case. Yes, Your Honor, you're correct. This is a branch of the... Plain error does not apply to waiver. If there's a waiver, there's no plain error, there's no review at all. We do not reach plain error, that is correct. And you're arguing that there's a waiver. That is correct, Your Honor, and that the court... And arguably a waiver is an intentional relinquishment of a known right. So there's nothing to show that this defendant knew about the argument that his new counsel is raising here. I think there is sufficient finding that the defendant knew that he was preserving some rights to challenge the procedural unreasonableness, but at the same time, putting forth and waiving the fact that he is in agreement with the enhancements that he had set forth in the other paragraph as part of the plea agreement. So the page six statement that I read, the defendant agree and recommend to the court the following enhancements, essentially in your view, is an explicit waiver. That is correct, Your Honor. And to satisfy your opponent, I suppose we could say, well, really this agreement should have said the defendant agrees and recommends and waives any future challenge to these enhancements. It would have been another way to accomplish what we are hearing. And so your argument is nothing more is really accomplished by adding the language that I'm making up here and waives any right to challenge. That is correct. It sort of restates what the law already allows in the fact that he has made this sort of recommendation and intentional declaration to the district court that the enhancement actually apply in his case. Suppose he had totally ineffective assistance of counsel at this plea stage and he signs an explicit waiver of a particular and says, yeah, government can apply and the court should apply a particular sentencing enhancement. And suppose it is blatantly obvious that this is wrong but the counsel is just not savvy on federal sentencing issues. Are you saying there would be no ability to challenge that on appeal on a plain error review? Certainly he would also have a right to pursue a 2255 claim with does in fact exist. I see opportunities and I think this court has held in times that the deviation which is largely left to the discretion of the court for manifest injustice is appropriate in particular if everyone is in agreement that this was a clear error and the parties are coming together and recommending that the court do such. I think here we are still challenging and maintaining that the imposition of the enhancement was not error. So that is a different One thing I have wondered a little bit about the government's position in these cases. I can understand enforcing these plea agreements and waivers when it applies to all arguments. But here we have a case where the second argument you are agreeing the plea waiver does not apply to. So we have review over something. The reality of a potential 2255 makes it a little puzzling to me it is not you are not now incentivized to have us address the merits of the charity enhancement. All you are doing by enforcing the waiver is creating this debate at the 2255 stage as to whether counsel's advice was good or not on this. That is going to take you back to the merits because it is just going to be a question of whether you are right or not and if you are wrong, how wrong you are. I can understand enforcing the plea agreements when it means no appeal. But when there is something in front of us, I don't really see the benefit to the government. Your Honor, I think there is a benefit in continuing to make consistent case law with respect to a waiver doctrine and with the invited error in such that this type of scenario does not get passed over and anyone believe that one should automatically proceed to the merits. I do think that even if the court decided to proceed to the merits here and found that the defendant had only forfeited his right to this claim, the court could still find that it does apply. Let's get to the merits. Your opponent argues that this application note 8b is clearly not satisfied here. I was making an effort to force 8b to apply but it does seem it is a difficult argument. How would you respond? How did this defendant represent that the defendant was acting to obtain a benefit on behalf of a charitable organization? Your Honor, I think the answer is in with what he was acting to obtain and that frankly was the names, date of birth, social security numbers, the personal information of these individuals under the guise that he would be using that information as a charity to make a decision as to whether they qualify for financial assistance, which was what was being purported in the opportunity that they could take advantage of. How is that a benefit for the charity? Your Honor, in sort of a non-fraudulent circumstance, one I think could certainly see that a charity who needs to make a decision, I have so many funds and I have so many applications coming in, who is sort of most deserving? They're going to need personal information about these individuals and so in asking for that in a non-fraudulent circumstances, it would be used, I would argue, by a charity to make those determinations. The fact that the defendant didn't use it for that but instead diverted it for his own use is also consistent with the commentary. Personal information is just as valuable these days and in many ways may have a monetary value to many defendants who are using it to commit fraud as other types of solicitations and the guideline certainly does not limit the to obtain a benefit or benefit language to just monetary donation. So the benefit in this note, in this case, is the individual information like social security numbers of the purported victims of the crime? Yes, it is the personal information. And the charity then, it's a benefit, it's not a benefit to them because they'd like to have lots of names and addresses because they're a telemarketing firm. It's a benefit to them because you're saying that's how they decide to whom to dole out the benefits, the charities? Yes, your honor. The advertisements were, and certainly it would be personal information as a whole, but one could not give out a grant of assistance without knowing who and where to verify some of the information that they submit in their application. So I do think that, no, not for telemarketing purposes, but to accomplish the goal of which the defendant put forth was here to provide financial assistance to individuals, it would be a benefit. You don't think that's a stretch? Do you think that's what they had in mind when they said that? I don't, your honor. I think it's a stretch in part because of the sort of nature of personal information these days. And the, I think, purpose here was to penalize those who are making misrepresentations in connection with a charity such that people are perhaps more willing to provide that benefit for whatever reason. And it is the fact that they're using sort of this guise as a charity that perhaps puts people at ease. The benefit itself, I don't know, is as important as the fact that it's connected to this misrepresentation. Yeah, but that's, I mean, like, I agree with you that the wording, it comes under the wording of the guidelines, but, I mean, the commentary's there and it kind of gives you the, it focuses you on what they had in mind, what the commission had in mind. And apparently, it wasn't just anybody acting like they're representing a charity, it was somebody getting something that people think they're giving it to the, this benefit to the charity, but they're not. So, it's sort of appealing to people to give something. And I agree with you, Your Honor, and I think this fits squarely. The individuals who gave their personal information thought that they would be giving something of benefit to the charity such that they could take advantage of what the charity has to offer them in its mission to provide financial assistance. Another way to put it is charities do two things. They raise money and they spend money. And the focus of many of these cases is on the fraud, at the raising money, that's where you see it most often. But you're not a charity if you don't spend money. And you can't spend money, that's the benefit to them. You can't spend money without addresses or folks that you're going to give it to. That is correct, Your Honor, and I believe that the guideline makes clear that the examples that are listed there, which may be something that we think more traditionally, are just that, examples. And they are not an exhaustive list of possible circumstances in which this would apply. Would you like to address the victim issue? Certainly, Your Honor. With respect to this claim, the government does submit that we are here on a plain error review. The defendant had objected at the district court level to the vulnerableness of the victims, not whether or not these individuals were in fact victims. And so we would ask the court to review it in that light. The district court, however, the government submit, did not err in applying the enhancement. We have a defendant who has created a false hope in individuals that they would receive financial assistance and instead take in their identities and use them to commit crimes. We submit that there is harm in and of itself of the use of the victim. The section itself does not necessarily define, and Casol seems to have a broad interpretation on what that harm might be. The government has encouraged the court to consider in section 2B1.1, where there is an enhancement for the number of victims that addresses victims in particular in the definition in terms of means of identity cases, which is something that we have here. In there, a victim qualifies simply by the use, unlawfully or without authority, by the defendant of their identification. We have that here. There is no doubt, too, that this issue not being before the court, there is less of a record having been developed, which is not surprising. It was not something that the court was asked to find. The court had no trouble finding that this enhancement was applicable. And I think even in some of the comments that the government made with respect to individuals who had to be interviewed by the IRS to confirm whether or not these tax returns are true or false, how did that impact their sort of tax account with the IRS? The district court could reasonably infer that there was harm as a result of this conduct. Does a person have to know that he or she is a victim or is affected in order to be a victim? Your Honor, I would say that no, the consequences still exist for the victim. I believe that they once become aware, perhaps it becomes real for them, but that their account has now been discovered still is a very real harm that exists in that instance. In this case, too, the vulnerable victim enhancement does only require the finding of one victim. I have a clueless question. I'm sure it's clueless. There was $1.5 million of tax refunds stolen. Is the idea that they're not victims because it was returned? Why wasn't at least one of the people, why isn't that the really simple answer since it only requires one victim? In terms of financially, because the returns were wholly false, there is... And the other individuals were not... No one lost money? Is that the point? No one lost money? The guy got $1.5 million, but it never... Only the government lost money. Only the government lost money? But it's tax refunds, it was supposed to go to them. It was false. The returns were false. There we go. It may or may not have been what the... The only thing correct about that question was how it started. It was clueless. Because these people weren't filing their own tax returns at all. Some were and some were not. Certainly there were some in that we had identified and that we highlighted to the court because we also felt that attributed to their vulnerableness because perhaps they were at an income level that didn't require that particular year and therefore may not have, which made them a very susceptible victim because they may not have checked to see if anyone else filed it for them or realized that they weren't getting their returns. Presumably the IRS getting two tax returns for the same person would start notifying people. That is also how we get our cases, Your Honor, yes. And your red is on today. So we will say thank you very much. Thank you very much. We ask that you affirm his sentence. Thank you. Your Honor, I'd like to pick up with Judge Sutton's question about where the money was going in this case. And I think it's a... While you admitted that it was a clueless question, I think it's an important one here. And that's because there was no pecuniary harm. The government concedes that here. But we have... You know the rest of the debate. We have specific sections that define victim in terms of financial harm. This one doesn't. That makes it pretty clear that's not the only way to achieve victim status. Well, that particular enhancement that defines victim specifically says that it only applies to that section. And so the government's attempt to sort of glue that onto this section, I think is misplaced. What we have here is a harm that other cases have found to be insufficient. And the government even concedes that it's... What it's arguing for is this sort of idea of like a per se harm. In every case where somebody's identification information is used, that is a per se harm that is sufficient under the vulnerable victim enhancement. But we're not saying that you can never have a situation... It doesn't seem strange to say in the abstract in an identity theft statute setting that identity theft creates a harm. That's the judgment of Congress. And here you don't say everyone with identity theft is necessarily a victim because you have to have vulnerable. Because the key word is vulnerable there. That's the point of it. But I don't think it's unusual to say if a state or the federal government decides we think identity theft is bad, that the people that are the objects of that crime are harmed. That's the underlying point of the judgment. Certainly, Your Honor, and that's why the government is well within its rights to prosecute for that kind of conduct. But enhancements aren't for the ordinary case, the baseline case. Enhancements are when there's something above and beyond. No, and that's why vulnerable is the key point here. The key word in this enhancement is certainly when this enhancement comes up, vulnerability is often at issue, but victim status is also often at issue. And yes, it may be the case, as Mr. Webster did challenge below, that vulnerability can be at play. But the point we're pressing here on appeal is that the victim status, that initial determination is also at play. And so when you have a situation where people are used as instrumentalities of a fraud, something more is needed than just an assumption that they are always going to qualify as victims. There needs to be an actual harm or an intended harm, but not a sort of metaphysical harm out there that we feel, even if we don't know about it, just the use of... It's not metaphysical. All you have to do is listen to the committee meeting in Congress where they decide why this is a problem, why identity theft by itself without regard to what it does to people is worth punishing. That's why it's worth punishing, Your Honor, but that's not why we have an enhancement to protect vulnerable victims here. If they weren't even aware of the fact... I see I'm out of time, Your Honor, if I may... Briefly. If they weren't even aware of the fact that they were victims, then the underlying purpose of that enhancement is simply lacking. And for those reasons, we ask that you vacate Mr. Webster's sentence and remand for resentencing. Thank you very much. Thank you both very much. The case will be submitted, and we understand that you are a law student and representing pursuant to the clinic at the University of Michigan, as I recall, and we thank you very much for your representation, and as always, the students from Michigan do an excellent job, as do the students from other schools that we have as well, but thank you very much. Thank you.